IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1998 SESSION

FILED

March 31, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 02C01-9704-CR-00155 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. James C. Beasley, Jr., Judge |
| CHRISTOPHER CAVNOR, | * | (Pretrial Diversion) |
| Appellant. | * | |

For Appellant:

Leslie I. Ballin
Mark A. Mesler
200 Jefferson Ave., Suite 1250
Memphis, TN  38103

For Appellee:

John Knox Walkup
Attorney General & Reporter

Elizabeth T. Ryan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243

Janet Shipman
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Street
Memphis, TN  38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

OPINION

The defendant, Christopher P. Cavnor, has been indicted for criminally negligent homicide. Tenn. Code Ann. § 39-13-212. The district attorney general denied the defendant's application for pretrial diversion. Thereafter, the trial court denied his petition for a writ of certiorari. In this interlocutory appeal made pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, the defendant insists that the district attorney general abused his discretion by the denial of pretrial diversion.

We find no error and affirm the judgment of the trial court.

On December 16, 1995, the defendant, who had been practice-firing a .357 magnum at a local shooting range, stopped at the residence of his friend, Jonathan Stone, to show the gun and how it was loaded. A short while later, the defendant handed the gun to the victim, mistakenly believing he had disarmed the weapon. It fired accidentally, a bullet striking the victim in the chest. The defendant immediately went inside and called 911 for assistance. Although the victim was rushed via helicopter to a trauma center, the injury proved to be fatal.

The defendant fully cooperated with the police and accepted full responsibility for the accidental death of the victim. While the defendant has made no direct apology to the victim's family, he expressed his regret through correspondence by his counsel requesting pretrial diversion.

The record includes the district attorney's letter denying diversion, a Shelby County pretrial investigation report, and a transcript of the hearing on petition for certiorari. The application for pretrial diversion is not included in the appellate record. At the time of the offense, the eighteen-year-old defendant had recently

2

graduated from Houston High School. He resided at home with his mother and step-father and had secured full-time employment with Adcart. The defendant had no criminal record or history of criminal behavior.

The district attorney denied pretrial diversion on the following grounds:

1. Victim's family is opposed to defendant being placed on diversion; this should be a major consideration in a case of this nature.

2. There is a need for deterrence since many crimes in this jurisdiction involve illegal use of handguns.

3. The defendant is a youthful offender; to divert cases of violence involving injury or death sends the wrong message to the youth of our community.

4. Crimes of violence are a serious problem in this community, and it does not serve the public interest to treat these crimes lightly.

5. Defendant does not have a gun permit and apparently has no handgun training.

6. No exceptional circumstances shown by defendant.

At the hearing, the district attorney testified without objection to additional reasons for the denial:

The first thing we look at is basically the circumstances of the crime. And, of course, in this case, we had a death--a sixteen-year-old boy that is dead as a result of the defendant's actions.

Secondly, it is a crime of violence. When a life is taken with the illegal use of a handgun, that is a violent crime, whether it's intentional or unintentional. All evidence shows this was an unintentional shooting. But there are things about this unintentional shooting that we look at. And one of them is there were no witnesses to this crime. It was a .357 magnum revolver. For that gun to be discharged, it had to be loaded, the safety had to be off, and someone had to pull the trigger. ... This gun, from all indications, properly operated. ... There was no indication that there was anything wrong with that weapon. And that is a circumstance of this crime that I considered in whether or not to give diversion.

3

This wasn't somebody out hunting with a rifle where the safety is on and off as you're hunting in a negligent homicide. This was two people, at close quarters. One of them winds up dead. That is something I considered.

The other thing I considered is the position of the victim on whether or not we should grant diversion. We have victim-impact legislation now that we do have to consider mandated by the legislature. And I think the court should consider that when a person in our community looses a sixteen-year-old son, they come to the courts for justice. They come to us to represent them. And I represented this family, in this case, by denying diversion.

And, thirdly, the case law is when there is a death involved, it is up to the defendant to show exceptional circumstances--not that [he] just qualif[ies]--not that [he is] a young man--that [he has] been employed one month somewhere. That's all that I had to look at. I had a young man that hadn't been arrested. He'd been employed one month somewhere....

The trial judge ruled that there was no abuse of discretion by the district attorney and accredited four of the district attorney's grounds for denial. Initially, he found that the district attorney was "justified" in looking for exceptional circumstances and that none had been provided by the defendant. Secondly, he recognized that the defendant had not contended that he had any prior handgun safety training or a permit, thus the district attorney was not "wrong in [relying on this basis] if nothing else were presented to him to the contrary." Thirdly, the trial judge found that the "ultimate" reason for denial was the facts and circumstances of the incident:

[T]his involved a gun--a pistol; that the nature of this particular pistol was a revolver which means it had to be loaded, manually; that in order for it to discharge, the trigger had to be pulled. And there was nothing presented to the district attorney, according to the testimony, that indicated that this was a malfunctioning pistol or hair-trigger pistol ....

And, also, the district attorney considered the fact that there were no witnesses. And that there were no exceptional circumstances presented ... there was nothing exceptionally extra presented in this case.

4

Finally, the trial judge found that the district attorney properly considered the victim's family's opposition to diversion. The trial judge did, however, question the district attorney's characterization of the situation as "illegal use" of a handgun and expressed reservations about the validity of the remaining grounds:

> I'm not sure I agree ... when it comes to the deterrence factor since many crimes in this jurisdiction involve illegal use of handguns. ... [O]bviously you have a handgun in the hands of a nineteen-year old, unlicensed, unsupervised ... that is an improper and, technically, an illegal possession ... and I think that should be deterred. But ... I don't know that this crime is the result of an illegal use ... other than he shouldn't have had it in his possession ....

* * *

> I don't think that this is the type of crime that I classify as a crime of violence, and I don't think this is the type of crime that the legislature and the courts view as a crime of violence.

* * *

> I'm concerned with this issue of cases involving, again, violence involving injury or death sends the wrong message to the youth of our community. I'm not sure about that issue.

Whether to grant or deny an application for pretrial diversion is in the discretion of the district attorney general. Tenn. Code Ann. § 40-15-105; State v. Hammersley, 650 S.W.2d 352, 353 (Tenn. 1983); State v. Carr, 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993). On a petition for certiorari, the hearing conducted by the trial judge is limited to two issues:

> (1) whether the accused is eligible for diversion; and
>
> (2) whether the attorney general abused his discretion in refusing to divert the accused.

State v. Watkins, 607 S.W.2d 486, 488-89 (Tenn. Crim. App. 1980).

5

In making the initial determination, the district attorney must consider (1) the circumstances of the offense; (2) the defendant's criminal record; (3) the defendant's social history; (4) the defendant's physical and mental condition; (5) the deterrent effect of punishment upon other criminal activity; (6) the defendant's amenability to correction; (7) the likelihood that pretrial diversion will "serve the ends of justice" and the best interests of the defendant and the public; and (8) the defendant's "attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and attitude of law enforcement." State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (citing State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988)). The nature and circumstances of the alleged offenses are not only appropriate factors to be considered upon application for diversion but may alone provide a sufficient basis for denial. Carr, 861 S.W.2d at 855; State v. Sutton, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984).

The circumstances of the case and a generalized need for deterrence, however, "cannot be given controlling weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" Washington, 866 S.W.2d at 951 (emphasis in original) (quoting Markham, 755 S.W.2d at 853). Where there are no "such exceptional circumstances, 'the district attorney general must consider evidence which tends to show that the applicant is amenable to correction [by diversion] and is not likely to commit further criminal acts.'" Id; see also State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993).

In State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989), our supreme court expounded upon the duties of the district attorney general in making the initial assessment:

6

> This requirement entails more than an abstract statement in the record that the district attorney general has considered these factors. He must articulate why he believes that a defendant in a particular case does not meet the test. If the attorney general bases his decision on less than the full complement of factors enumerated in this opinion he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration.

"The decision of a district attorney general granting or denying pretrial diversion to an accused is said to be 'presumptively correct'; and the decision should not be set aside unless there has been a 'patent or gross abuse of prosecutorial discretion.'" State v. Perry, 882 S.W.2d 357, 360 (Tenn. Crim. App. 1994) (quoting Pace v. State, 566 S.W.2d 861, 870 (Tenn. 1978)). See State v. Pinkham, 955 S.W.2d 956, 957 (Tenn. 1997) (holding the district attorney must "include in the record the factual basis and rationale for denying diversion").

The defendant has the burden of providing the district attorney with information in his application that supports his eligibility and suitability for pretrial diversion. Herron, 767 S.W.2d at 156. The trial court does not conduct a de novo review at the certiorari hearing but looks instead only to the information available to and considered by the prosecutor when deciding to deny diversion. Winsett, 882 S.W.2d at 809; Sutton, 668 S.W.2d at 680. And, where the record would support the grant or denial of pretrial diversion, the court must defer to the prosecutor's discretion. Carr, 861 S.W.2d at 856 (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)).

Opposition by the victim's family, suggested by the district attorney as a "major" reason for denial of diversion, is not expressly included among the factors presented in Hammersley. This court has previously held that such "opposition to pre-trial diversion is not a proper factor for consideration." State v. Peter A. Gibson,

C.C.A. No. 1043, slip op. at 2 (Tenn. Crim. App., at Knoxville, Nov. 7, 1988) (citing State v. Morton, 639 S.W.2d 666, 669 (Tenn. Crim. App. 1982)); State v. John Howard Alden, C.C.A. No. 01C01-9309-CC-00299, slip op. at 3 (Tenn. Crim. App., at Nashville, May 12, 1995) ("The attitude of the victims toward pre-trial diversion was irrelevant and did not constitute a proper reason for denying diversion"). Thus, the district attorney improperly considered this ground.[1]

Nor was it proper for the district attorney to require a showing of exceptional circumstances by the defendant. It is well established that principles applied in probation cases also apply to pretrial diversion. Hammersley, 650 S.W.2d at 354-55. The state argues under Kilgore v. State, 588 S.W.2d 567, 568 (Tenn. Crim. App. 1979), the defendant must show exceptional circumstances to receive diversion because this offense resulted in a death. This court has held that the rule announced in Kilgore is no longer applicable in probation eligibility cases because the legislature has established statutory eligibility requirements. State v. Adams, 916 S.W.2d 471, 477 (Tenn. Crim. App. 1995). In our view, this rationale applies in determining pretrial diversion eligibility as well. The legislature established eligibility requirements for pretrial diversion and the defendant meets those requirements. Tenn. Code Ann. § 40-15-105(a). The legislature did not exclude from eligibility persons charged with offenses resulting in loss of life, nor did the legislature condition eligibility in such cases on a showing of exceptional circumstances. Id.

In his application for diversion, the defendant did fail to demonstrate that he had a permit or had otherwise undergone training in the handling of guns. At

---

[1]Opposition by a victim or member of a victim's family should be distinguished from victim impact statements that reflect the circumstances of the offense. See State v. Randy Scott Morrell, C.C.A. No. 03C01-9511-CC-00344, slip op. at 4, n.1 (Tenn. Crim. App., at Knoxville, Oct. 21, 1997).

the hearing, however, the defendant's step-father testified that a law enforcement officer had, some several years earlier, shown the defendant how to properly handle and shoot a handgun. The defendant did not have a permit for the .357 magnum. That, in our view, weighs favorably for the position of the state.

In any event, the remaining grounds adequately support the district attorney's decision. That the defendant lacked adequate firearm training and had no permit for the weapon were important factors supporting the denial of diversion. Moreover, the nature and circumstances of this incident are particularly serious in that a death resulted from the unsupervised, unlicensed use of a handgun by a young adult. The trial judge found as fact that this type of gun would not fire without someone pulling the trigger. The gun was in proper working condition. Those findings are binding on this court because the evidence does not preponderate otherwise. State v. O'Guinn, 709 S.W.2d 561, 565-66 (Tenn. 1986); see State v. Houston, 900 S.W.2d 712, 715 (Tenn. Crim. App. 1995). In consequence, the district attorney general's rejection of the defendant's application for pretrial diversion was not an abuse of discretion.

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
Joe B. Jones, Presiding Judge


_____
Jerry L. Smith, Judge

9